IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 AUG -1 AM 10:51

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

ALLEN R. CARSON, SR.,

    Plaintiff,

vs.

No. 04-2098-Ml/V

TECHNICOLOR VIDEOCASSETTE OF
MICHIGAN, INC. d/b/a
TECHNICOLOR,

    Defendant.

---

ORDER CORRECTING THE DOCKET
AND
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Allen R. Carson, Sr. filed a pro se complaint pursuant to Title VII of the Civil Rights Act of 1964 on February 18, 2004, in which he alleged that he was terminated on account of his sex. Plaintiff paid the civil filing fee. Because the Complaint, on its face, alleged that the Plaintiff commenced this action more than ninety days after receipt of a right to sue letter, the Court issued an order on February 27, 2004, directing the Plaintiff to show cause, within thirty days, why the action should not be dismissed as time barred. Plaintiff filed a response on March 10, 2004, in which he asserted, inter alia, that he had misread the Complaint form as calling for the date on which the right to sue letter was issued, not the date on which he received it. The Court issued an order on July 15, 2004, authorizing the Clerk to issue a

This document entered on the docket sheet In compliance
with Rule 58 and/or 79(a) FRCP on  8-1-05



summons to the Plaintiff and directing the Plaintiff to effect service on the Defendant. The Defendant, Technicolor Videocassette of Michigan, Inc. d/b/a Technicolor ("Technicolor"),[1] answered the Complaint on September 8, 2004.

The Plaintiff alleges that he was terminated on account of his sex. He timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 10, 2002.[2] The EEOC issued a right to sue letter on November 19, 2003, and the Plaintiff alleges that he received the letter on that date.

On March 31, 2005, Technicolor filed a motion for summary judgment, supported by a statement of material facts, a memorandum of law, and the affidavit of Sue Bradford, who is employed by Technicolor as its Administrative Services Manager. Plaintiff filed his response to the summary judgment motion on April 13, 2005.

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof

---

[1] The Clerk is ORDERED to correct the docket to reflect the Defendant's legal name.

[2] Although the Complaint alleges that the Plaintiff's EEOC charge was filed on July 7, 2001, a copy of the charge, dated July 10, 2002, is attached to the Complaint.

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).[3]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v.

---

[3] Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

3

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Moreover, Fed. R. Civ. P. 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." Cacevic v. City of Hazel Park, 226 F.3d

4

483, 488 (6th Cir. 2000); see also Good v. Ohio Edison Co., 149 F.3d 413, 422 (6th Cir. 1998); Plott v. General Motors Corp., 71 F.3d 1190, 1196-97 (6th Cir. 1995). Moreover, the Sixth Circuit has held that, unless the nonmoving party files a Rule 56(f) affidavit, a district court cannot decline to consider the merits of a summary judgment motion on the ground that it is premature. Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003).

In this case, the Plaintiff contends that he was terminated on account of his sex. In support of its summary judgment motion, the Defendant submitted the affidavit of Sue Bradford, sworn to on Mar. 31, 2005 ("Bradford Aff."), which stated in pertinent part as follows:

> 1. I am a resident of Shelby County, Tennessee. I am over eighteen years of age. I am competent to testify about the matters below and state this on my own personal knowledge.
>
> 2. I am employed by Defendant Technicolor Videocassette of Michigan, Inc. ("Technicolor") at its Memphis facility as Administrative Services Manager. I have responsibility for handling personnel and human resources matters at the Memphis facility.
>
> 3. On December 17, 2001, Plaintiff Allen Carson, Sr., was hired as Material Handler in the Distribution Department, 1st Shift.
>
> 4. Newly hired Technicolor employees are subject to a three-month orientation and probationary period. Employees within their probationary period are not subject to the company's progressive discipline procedures. . . .[4]
>
> 5. In February 2002, I learned that two female individuals Mary Adair and Latunda Dugan were involved in a verbal confrontation on the warehouse floor.

---

[4]   A copy of the Defendant's employee handbook is attached as Exhibit A to the Bradford Affidavit.

> 6. The Technicolor Human Resources Department investigated the incident. In the course of the Company's investigation, Technicolor employees provided written statements to the Company indicating that Plaintiff Allen Carson had instigated the confrontation between the two female employees. I determined that Allen Carson had incited and heightened the situation by moving from group to group, making false statements about the two female employees, which led to a verbal confrontation between those employees. . . . [5]
>
> 7. Because of Plaintiff's role as the instigator of the verbal confrontation and his 90-day probationary period status, I terminated his employment at Technicolor on February 13, 2002. . . .
>
> 8. The two female employees Mary Adair and Latunda Dugan (who were also in their probationary period) were given discipline in the form of written warnings but were not terminated. . . . I did not terminate the employment of Ms. Adair and Ms. Dugan because I did not believe their misconduct was as severe as Plaintiff, who instigated the incident.

The separation notice issued to the Plaintiff, a copy of which is attached as Exhibit C to the Bradford Affidavit, says that Plaintiff was discharged for "Violation of Company Policy—Inappropriate use of company time; Interfering with an employee's performance of duties; and Creating a disturbance, confusion, and/or panic."

Neither the Bradford Affidavit, nor the Defendant's investigative file, reveals precisely what Plaintiff is alleged to have done. The Equal Employment Opportunity Commission ("EEOC") issued a determination, dated September 30, 2003, that the Defendant discriminated against the Plaintiff on account of his sex. In so concluding, the EEOC summarized the factual situation as follows:

> It is undisputed that Charging Party showed some employees pictures of several female co-workers taken at

---

[5] A copy of the Defendant's investigative file is attached as Exhibit B to the Bradford Affidavit.

6

a local club. When Charging Party returned the pictures to the co-workers, he remarked that some comments were made regarding the pictures by other workers. It is further undisputed that the co-workers confronted the persons who allegedly made the comments and a verbal altercation ensued.

The Defendant's investigative file does not appear to provide support for Bradford's assertion that Plaintiff "had incited and heightened the situation by moving from group to group, making false statements about the two female employees." It is not clear which of the Defendant's employees brought the pictures to work or how the Plaintiff obtained them. In his unsworn response to the summary judgment motion, the Plaintiff contends that he passed the picture to a female employee because he was asked to do so. He also contends that he passed the picture almost twenty-four hours before the altercation between Adair and Dugan. Plaintiff had previously related this version of events to the EEOC, and nothing in the investigative file contradicts these assertions.[6]

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court set forth a methodology for evaluating evidence in discrimination cases where, as here, the plaintiff has no direct evidence of discrimination. That process has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the

---

[6] The Court does not make any factual findings about the cause of the altercation or the Plaintiff's role in it, as those matters appear to be disputed. Instead, the Court has cited the varying versions of events, and the EEOC's summary, solely in order to provide a factual context to the summary judgment motion.

7

defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 253.

Defendant first contends that Plaintiff is unable to establish a prima facie case of sex discrimination. In order to establish a prima facie case of discrimination in connection with a termination, the Plaintiff must show the following:

> (1) that he is a member of a protected group; (2) that he was subject to an adverse employment action; (3) that he was qualified for the position from which he was fired; and (4) that he was treated different than employees outside of the protected class for the same or similar conduct.

Singfield v. Akron Metropolitan Housing Auth., 389 F.3d 555, 561 (6th Cir. 2004); see also Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002). In order to satisfy the fourth element, the Plaintiff and the nonprotected coworkers must be similar in all relevant respects. Singfield, 389 F.3d at 562 (collecting cases). In this case, Defendant apparently concedes, for purposes of this motion, that the first three elements are satisfied.

The analysis of the fourth element in this case is complicated by the fact that the parties have not clearly described the incident that led to the Plaintiff's termination. Plaintiff

8

contends that he was similarly situated to Adair and Dugan, two female probationary employees who were involved in the same incident and who were not terminated. Defendant contends, citing Gray v. Toshiba Am. Consumer Prods., 263 F.3d 595, 601 (6th Cir. 2001), that Adair and Dugan are not similarly situated because Plaintiff instigated the confrontation. In Gray, the plaintiff physically assaulted a coworker after announcing her intentions to several superiors and being warned by them not to do so. In holding that the plaintiff was not similarly situated to various male employees who had not been terminated for fighting, the Sixth Circuit relied in part on a newly enacted policy that permitted the company to terminate an employee who was found to be the instigator of a fight. Id. The Plaintiff in this case is not an "instigator" in the same sense as the plaintiff in Gray, who physically assaulted a coworker, even if it is accepted that Plaintiff's actions somehow prompted the verbal altercation involving Adair and Dugan. Moreover, in contrast to the situation in Gray, the Defendant in this case has no explicit written policy that instigators of altercations, whether physical or otherwise, are subject to more serious discipline than other participants.

Indeed, the Defendant apparently has no written policies concerning the circumstances under which probationary employees may be terminated. Thus, Plaintiff also notes that, in contrast to Adair and Dugan, he had not received any other reprimands during his probationary period, which he was days from completing at the time of his discharge. In addition to the incident at issue, Plaintiff

9

has submitted documents indicating that Dugan was involved in at least three other incidents during her probationary period. On January 4, 2002, Dugan walked in front of a moving forklift and, when the operator asked why she did that, she replied "'Because [I] can' and proceeded to walk in front of his lift again." Dugan received a written reprimand on January 11, 2002. Although this incident is factually dissimilar to that for which the Plaintiff was terminated, it is both a potentially serious safety violation and also could be characterized as instigating a confrontation with the forklift operator and interfering with his performance of his job duties. The Defendant's submission ignores Dugan's prior disciplinary history.[7]

Likewise, on February 19, 2002, approximately one week after the incident that resulted in the Plaintiff's termination, Dugan stopped processing and pulling orders, leading to a third written warning during her 90-day probationary period. More significantly, on March 19, 2002, Dugan apparently threatened to strike a coworker with a metal napkin holder and had to be physically restrained by another employee. In a memorandum to

---

[7] Although Plaintiff asserts that Adair had received a written warning prior to the incident at issue, he has not submitted any documents to support that claim. The documents concerning Adair are dated substantially later than the incident at issue, after the completion of her probationary period, and are, therefore, not relevant.

Plaintiff has also submitted documents concerning an employee named Emma Johnson, but it is not clear what involvement Johnson had in the incident at issue. It appears that Johnson was depicted in the photograph Plaintiff was passing around, but she did not take part in the verbal altercation that prompted the investigation and she was not disciplined. It also appears that Johnson was hired on September 27, 1999, so she was not a probationary employee during the events at issue. Under these circumstances, it is irrelevant that she was later involved in an argument that resulted in a verbal warning but not a termination.

10

Bradford, dated March 21, 2002, in which it was recommended that Dugan be terminated "[b]ecause of the seriousness of this latest incident," it was stated that "[t]his is not the first incident that Latunda has been involved in with other employees. There is documentation to support counseling sessions regarding her inappropriate behavior with other employees." Dugan was terminated as a result of the March 19, 2002 incident.

In light of the number of disciplinary incidents, some of which involve inappropriate conduct toward other employees, in which Dugan has been involved during her probationary period, Plaintiff has come forward with sufficient evidence to raise a triable issue with respect to whether he was treated less favorably than was Dugan. Accordingly, Plaintiff has produced sufficient evidence to permit a jury to conclude that he has established a prima facie case of sex discrimination.

As an alternative ground for its summary judgment motion, Defendant asserts that Plaintiff has not come forward with sufficient evidence that its purported reason for discharging Plaintiff was pretextual. Once a defendant articulates a legitimate, nondiscriminatory reason for its action, the burden shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that that explanation is pretextual and that his termination was actually motivated by his sex. Raytheon Corp. v. Hernandez, 540 U.S. 44, 53 (2003); Hicks v. St. Mary's Honor Center, 509 U.S. 502, 507-08 (1993). An explanation is pretextual if it "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged

11

conduct, or (3) was insufficient to warrant the challenged conduct." Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000); see also Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1996). A jury may be entitled to infer discrimination from a plaintiff's prima facie case and evidence of pretext. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."); St. Mary's Honor Center, 509 U.S. at 511 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

In this case, Defendant asserts that Plaintiff cannot demonstrate that its conclusion that Plaintiff was the instigator was a pretext for discrimination. However, as previously stated, the basis for the Defendant's purported conclusion is unclear, the Defendant has no clear policy addressing incidents such as this one, and Dugan was not terminated until after several incidents of inappropriate conduct toward coworkers during her probationary period. Under these circumstances, the Plaintiff has come forward with sufficient evidence to raise a triable issue of fact as to whether he was terminated on account of his sex.

For all the foregoing reasons, the Court DENIES Defendant's motion for summary judgment.

IT IS SO ORDERED this \_\_\_1\_\_\_ day of August, 2005.

_/s/ Jon P. McCalla_
JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 15 in case 2:04-CV-02098 was distributed by fax, mail, or direct printing on August 1, 2005 to the parties listed.

---

Allen R. Carson
4264 Caryhill Dr.
Memphis, TN 38141

David M. Rudolph
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Honorable Jon McCalla
US DISTRICT COURT